UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GUILLERMO GARCIA HEMBREE,

    Plaintiff,

v.                                                       Case No.:  2:22-cv-562-SPC-NPM

MICHAEL STEVE ROJAS,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment (Doc. 72), Plaintiff's Response (Doc. 76), and Defendant's Reply (Doc. 77), as well as Plaintiff's construed Motion to Strike (Doc. 78), Defendant's Response (Doc. 79), and Plaintiff's Reply (Doc. 80). For the below reasons, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion to strike.

This is an excessive-force case. Plaintiff alleges that during his arrest Defendant "punched [him] in the chest, then slammed [him] on his back, then kneed [him] in his groin causing great bodily harm, all while [he] was handcuffed." (Doc. 42 ¶ 10). Defendant claims that Plaintiff was resisting and, therefore, he pushed Plaintiff into the back seat of his patrol vehicle. Defendant argues, among other things, that he is entitled to summary

judgment on qualified-immunity grounds even if Plaintiff's allegations are taken as true.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Court analyzes excessive-force claims, like the one here, under the Fourth Amendment's objective reasonableness standard.  Under that standard, the Court balances the nature and quality of the intrusion on the individual against the government's justification for using force.  *See Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022).  Relevant factors include the severity of the underlying crime, whether the suspect poses an immediate threat to others, whether the suspect is resisting arrest, the

2

relationship between the justification and the amount of force used, and the extent of the resulting injury. *Id.*

Defendant is entitled to summary judgment because his response to Plaintiff's resistance did not violate Plaintiff's clearly established constitutional rights.

There is no dispute here that Defendant acted within the scope of his discretionary authority to arrest Plaintiff. Once an officer shows he acted within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Cook v. Bell*, No. 22-13928, 2024 WL 889041, at *3 (11th Cir. Mar. 1, 2024) (quotation omitted). Plaintiff has failed to meet his burden to show that qualified immunity should not apply. Plaintiff tries to recite the qualified immunity standard but never explains how Defendant's actions violated his clearly established constitutional rights. (Doc. 76 at 10). This alone supports summary judgment in Defendant's favor.[1]

That said, the Court has done the legwork for Plaintiff, yet it remains unconvinced that Defendant violated Plaintiff's clearly established constitutional rights. The factors mentioned above—the severity of the crime,

---

[1] The closest Plaintiff gets is his citation describing *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002). However, that excessive-force case involved an insignificant crime (honking a car horn), with no evidence that the plaintiff resisted and no legitimate law-enforcement justification for the force used. For those reasons *Lee* is distinguishable.

whether the suspect is a threat or resisting, the relationship between the amount of force and its justification, and the resulting injury—support this conclusion.

The underlying crimes here are serious. Defendant encountered Plaintiff while responding to a call where a woman accused Plaintiff of hitting her. While Defendant sorted out the allegations, Plaintiff was handcuffed and placed in another officer's patrol vehicle. Defendant met with the victim, and she provided a written statement. (Doc. 72-2). Defendant approached the patrol vehicle to advise Plaintiff that he was under arrest for battery. When Defendant opened the door, he observed a baggie containing what later turned out to be methamphetamine between Plaintiff's feet. Plaintiff was additionally charged with possession of a controlled substance.[2] The seriousness of the crimes weighs in favor of qualified immunity.

Next, whether Plaintiff was a threat or resisted arrest. Plaintiff was initially suspected of domestic violence, handcuffed, and placed in the back of another officer's patrol vehicle without incident. But when Defendant

---

[2] Plaintiff tells a different story regarding the meth. He claims that Defendant planted the drugs on him. But Plaintiff was ultimately convicted of possession of a controlled substance. That conviction has been upheld on appeal. (Doc. 77-1). So Plaintiff cannot bring a § 1983 claim "based on the assertion that there was no probable cause to believe he had committed" the meth offense. *See Clement v. McCarley*, 708 F. App'x 585, 589 (11th Cir. 2017) (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Plaintiff's claims about the drugs do underscore, however, that "Plaintiff did not want to get into [Defendant's] car[.]" (Doc. 76 at 12).

discovered meth at Plaintiff's feet and attempted to transfer him from the other patrol vehicle to his own vehicle, Plaintiff—now under arrest and accused of both battery and possession—was no longer cooperative. He began to resist.

Plaintiff attempts to create a factual dispute as to whether he was resisting. (Doc. 76 ¶ ¶ 2, 3, 11, 12). Yet, Plaintiff admits resisting in his signed declaration.[3] According to Plaintiff, Defendant asked him to get in the back of Defendant's patrol vehicle. But Plaintiff thought that Defendant was going to plant drugs on him. Rather than complying, Plaintiff "scream[ed] as loud as [he could] for help." Plaintiff asserts he "would not shut up," because he "need[ed] to get away from this dirty cop." (Doc. 76-1 at 2). Plaintiff admits he was not cooperating with Defendant's orders. This is not a case of "gratuitous use of force when a criminal suspect is not resisting arrest[.]" *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). That Plaintiff was being uncooperative weighs in favor of qualified immunity. *See Buckley v. Haddock*, 292 F. App'x 791, 798 (11th Cir. 2008) (holding that an officer's use of a taser three times was not excessive force when the handcuffed plaintiff sat on the ground with his legs crossed and refused to walk to the police car).

The relationship between the amount of force used and its justification also favors qualified immunity. Crediting Plaintiff's declaration, in response

---

[3] The Court considers Plaintiff's declaration because it complies with 28 U.S.C. § 1746.

5

to his screaming, Defendant "punched [him] in the chest, slammed [him] on [his] back on his backseat and [he] landed on the floorboard half in half out of the vehicle."[4]  Plaintiff continued screaming as loud as he could, Defendant then "kneed [Plaintiff] in the groin with such force" that Plaintiff "practically flew all the way into his vehicle[.]" [5] Defendant then shut the door. (Doc. 76-1 at 2).

Defendant was attempting to complete Plaintiff's arrest.  He asked Plaintiff to get into the back of his patrol vehicle.  Plaintiff did not comply, opting to scream as loud as he could.  So, Defendant had to physically force Plaintiff into the vehicle.  He did that, closed the door, and did not touch Plaintiff again.  Courts have upheld the use of similar or greater force against arrestees. *See, e.g.*, *Woodruff v. City of Trussville*, 434 F. App'x 852, 855 (11th Cir. 2011) (punching the plaintiff in the face, forcefully removing him from his car, and slamming him on the ground); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000) (shoving plaintiff against vehicle, pushing knee into his back and head against a vehicle, and searching his groin area in an uncomfortable manner); *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1319 (S.D. Fla. 2012) (punching the plaintiff as hard as he could in the ribs and face).  Defendant

---

[4] Contrary to his declaration, medical records reflect that Plaintiff told Cape Coral Hospital that he was "slammed against a patrol car by the police while under arrest." (Doc. 76-2 at 5).

[5] Defendant claims he only pushed Plaintiff. (Doc. 72 ¶ 21).

6

had a legitimate law-enforcement justification for the force allegedly used. That force stopped as soon as Defendant secured Plaintiff in the back of his patrol vehicle.

Finally, Plaintiff's declaration says nothing about injuries. Although, Plaintiff's medical records reflect his resulting injuries were minor. Defendant testified that, after Plaintiff's arrest, he started complaining about back pain and requested an ambulance. Defendant testified that Plaintiff did not seem to be in pain but was instead coming up with an excuse to avoid his arrest. (Doc. 76-5 at 16). However, an ambulance was called and took Plaintiff to Cape Coral Hospital. Medical records from the emergency department show that Plaintiff complained of lower back pain. The injury "was apparently isolated to the right lower back." (Doc. 76-2 at 5). Plaintiff also "admit[ted] to chronic back pain problems." (*Id.*). Plaintiff had normal range of motion, without tenderness. (*Id.* at 7). He had only a "[m]inor linear abrasion" on his right lower back, with "[n]o bruising or swelling." (*Id.*). X-ray results were negative. (*Id.* at 5). Plaintiff did not mention a punch to his chest or a knee to his groin. Examination of his chest showed no chest pain. (*Id.* at 6). Plaintiff made no urinary complaints, but urinalysis showed hematuria (blood in the urine). (*Id.* at 5). The hospital medically cleared Plaintiff and advised that he could use Tylenol or Motrin. (*Id.* at 5).

7

The only other evidence of Plaintiff's injuries comes from his deposition. Plaintiff testified that he suffered pain in his groin and back and had swelling and bruising the next morning. (Doc. 72-3 at 31-32). When asked how long the pain from his arrest lasted, Plaintiff could not say. (*Id.*). He testified that during prior work as a "tree supervisor," he injured his back lifting a log. (*Id.* at 10). So, he "continuously had back problems" and could not differentiate this pain from the pain caused by Defendant. (*Id.* at 31-32). Plaintiff also testified that he requested only mental health treatment in jail after the incident. (*Id.* at 33-35). And Plaintiff has not been diagnosed with any mental health condition. (*Id.* at 35).

The evidence shows that Plaintiff was not seriously injured from his encounter with Defendant. Viewing Plaintiff's injuries in the light most favorable to him (and assuming those injuries were caused by Defendant), his worst injuries were only a minor abrasion, moderate blood in his urine, and some swelling and bruising the next day. These injuries weigh in favor of qualified immunity.

Weighing these factors, the Court is unconvinced that Defendant violated Plaintiff's clearly established constitutional rights. Defendant arrested Plaintiff for serious crimes involving drugs and violence. Plaintiff admittedly resisted Defendant's commands by screaming loudly and not following orders. Defendant had to physically force Plaintiff into the back of

8

the patrol vehicle. The force stopped as soon as the door closed. Plaintiff's resulting injuries were minor. These factors establish that Defendant's conduct falls safely within the "hazy border between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Accordingly, the Court must grant summary judgment in Defendant's favor.[6]

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 72) is **GRANTED**.

2. Plaintiff's construed Motion to Strike (Doc. 78) is **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment for Defendant, deny any pending motions, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 15, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[6] Plaintiff asks the Court to strike Defendant's Reply because Defendant referenced his conviction for sexual battery on a child in a footnote. (Doc. 78). The Court disfavors motions to strike and considers them time wasters. This has proven true in this case. Defendant's response explains how "judges are not like pigs, hunting for truffles buried in briefs." (Doc. 79 at 3). Plaintiff replies by threatening a bar complaint. (Doc. 80 at 1). The Court is not getting involved in this sideshow. The Court denies Plaintiff's motion to strike and will not consider his conviction for sexual battery on a child as relevant to this order.